Filed 5/20/15  Harjo v. Deutsche Bank Nat. Trust CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BEN R. HARJO et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee, etc., et al.,<br><br>    Defendants and Respondents. | D065866<br><br><br><br>(Super. Ct. No. 37-2013-00045060-CU-OR-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Robert P. Dahlquist, Judge.  Affirmed.

Ben R. Harjo and Jennifer E. Harjo, in pro. per., for Plaintiffs and Appellants.

Severson & Werson, Jan T. Chilton, Michael G. Cross and Kerry W. Franich for Defendants and Respondents.

Plaintiffs and appellants Ben R. Harjo and Jennifer E. Harjo filed a complaint against an assignee of a deed of trust on their home, defendant and respondent Nationstar Mortgage LLC (Nationstar), among others.  The Harjos' complaint alleges the assignment

of the deed of trust was improper and they seek to prevent Nationstar from foreclosing on it, notwithstanding the fact the Harjos are in arrears on payments due on the promissory note, which is secured by the deed of trust.

The trial court sustained a demurrer filed by Nationstar and the other defendants without leave to amend and dismissed the Harjos' complaint. The Harjos filed a timely notice of appeal.

We affirm. As we explain, the Harjos' claims for relief under the terms of the Homeowner Bill of Rights (HBR) (See Civ. Code, § 2920.5 et seq.)[1] largely fail because the allegations of their complaint show that they were given the opportunity to apply for a loan modification, their application was denied, and, on appeal to the entity servicing the loan, the denial was upheld. The Harjos make additional claims based on two alleged circumstances: (1) at some point shortly after the Harjos executed the note secured by the deed of trust, their original lender, defendant First Magnus Financial Corporation (First Magnus) assigned the note to defendant and respondent Deutsche Bank National Trust Company (Deutsche Bank), and, thereafter, First Magnus was the subject of a bankruptcy proceeding; and (2) after the Magnus bankruptcy proceeding commenced, the corporation identified in the deed of trust as Magnus's nominee recorded an assignment of its interest in the deed of trust to another corporation. As we explain in greater detail below, these circumstances had no material impact on the Harjos' interests or obligations and do not in any manner prevent Nationstar, as trustee, from foreclosing on the deed of trust.

---

[1]     All further statutory references are to the Civil Code.

2

A. Factual Allegations

The Harjos' second amended complaint (SAC) makes the following factual allegations:

1. *2006 Purchase*

In 2006, the Harjos purchased a home in Encinitas and obtained purchase money financing in the amount of $956,250 from Magnus. As is common, the financing was memorialized in a promissory note and deed of trust the Harjos provided Magnus.

Under the terms of the deed of trust, the Harjos assigned their interest in the home to Fidelity National Title as trustee for defendant and respondent Mortgage Electronic Register System (MERS), which was the named beneficiary of the deed of trust. With respect to MERS, the deed of trust stated: "The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS."

The Harjos are informed and believe that "shortly after executing the Note, Defendant First Magnus granted, assigned and transferred the Note to Defendant Deutsche where it was pooled with thousands of other promissory notes, then transferred into a pre-designed trenched classifications [*sic*] to become securitized as shares for sale in the open market."

On May 30, 2008, Magnus "was dissolved and ceased to exist as a legal entity."

2. *Notice of Default*

On August 21, 2009, MERS and defendant Cal-Western Reconveyance Corporation (Cal-Western) recorded a notice of default on the Harjos' property; the notice stated that the Harjos had failed to make payments of principal and interest due on the

3

note and that MERS had elected to sell the Harjos' home to satisfy the obligation.

On February 22, 2011, MERS recorded an assignment of its interest in the deed of trust and role as the lender's nominee to defendant and respondent Aurora Loan Services, LLC (Aurora). The Harjos are informed and believe the assignment bears the forged signature of the person who signed on behalf of MERS.

3. *Notice of Trustee's Sale/Forbearance*

On February 28, 2011, MERS and Cal-Western recorded a notice of trustee's sale, which alleged the Harjos were in default under the terms of the note and set a date for sale of the home. On November 26, 2011, the Harjos and Aurora entered into an agreement under which Aurora agreed to forebear foreclosure and the Harjos agreed to repay the arrearages due on the note. By its terms, the forbearance agreement required that the Harjos make a final payment of $98,449 on May 1, 2012 and further provided that the forbearance agreement itself would expire on May 1, 2012.

On July 1, 2012, Aurora assigned its interest in the deed of trust to defendant Nationstar Mortgage LLC (Nationstar). On July 29, 2012, the Harjos applied to Nationstar for a mortgage modification.

On April 9, 2013, Nationstar recorded a second notice of trustee's sale.

4. *These Proceedings*

The Harjos commenced this action shortly before Nationstar recorded the second notice of trustee's sale, and, on May 30, 2013, the Harjos obtained a temporary restraining order preventing the trustee's sale. Also on May 30, 2013, Nationstar notified the Harjos it would not enter into a mortgage modification agreement with them.

On July 22, 2013, Nationstar rescinded the notice of default and election to sell

4

under the deed of trust.  On July 25, 2013, Nationstar sent the Harjos a revised notice that it would not enter into a mortgage modification agreement; unlike the May 30, 2013 notice, the July 25, 2013 notice included information about the Harjos' appeal rights.

In August 2013, the Harjos sent Nationstar an appeal of Nationstar's decision not to modify the Harjos' note and deed of trust, and, in October 2013, Nationstar denied the Harjos' appeal.

B.  The Harjos' Claims

The Harjos' SAC set forth a total of 12 causes of action.  Nationstar filed a demurrer to the SAC, and the trial court sustained the demurrer without leave to amend and dismissed the complaint.  The Harjos filed a timely notice of appeal.

As the defendants point out, on appeal the Harjos only assert the validity of four of the causes of action in the SAC: injunctive relief for violations of the HBR, quiet title, cancellation of instruments and an accounting.

DISCUSSION

I

We review orders sustaining demurrers without leave to amend under two distinct standards of review on appeal.  (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879). We first review the SAC de novo to determine if the complaint alleges facts sufficient to state a cause of action under any legal theory.  (*McCall v. PacificCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415).  We then review the denial of leave to amend for abuse of discretion.  (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 ["If the court sustained the demurrer without leave to amend . . . we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. . . .

5

The plaintiff has the burden of proving that an amendment would cure the defect."].)

On appeal, the reviewing court must treat the demurrer as admitting all properly pleaded material facts; however, this does not include contentions, deductions or conclusions.  (*Aubry v. Tri–City Hospital Dist.* (1992) 2 Cal.4th 962, 966–967).
In addition to allegations in the complaint, the reviewing court must properly consider evidentiary facts that appear in exhibits attached to the complaint.  (*Satten v. Webb* (2002) 99 Cal.App.4th 365, 375).  Furthermore, "[a]ny allegations in the complaint which are inconsistent with facts set out in an unambiguous written instrument, incorporated by reference, may be stricken."  (*Fundin v. Chicago Pneumatic Tool Co.* (1984) 152 Cal.App.3d 951, 955.)

## II

In the first cause of action, the SAC alleges that the defendants violated four provisions of the HBR—sections 2923.6, 2923.7, 2924.10 and 2924.11— and that the violations give rise to the right to injunctive relief.  As the defendants point out, the record shows that no violation of the statutes occurred.

A.  Section 2923.6

As of January 1, 2013, section 2923.6 requires that before recording a notice of default or notice of sale or conducting a trustee's sale, loan servicers, such as MERS or Nationstar, must offer borrowers any workout plan or loan modification that is consistent with the servicer's contractual or other authority.  (§ 2923.6, subd. (c).)  The statute further prevents loan servicers from recording a notice of default or notice of sale or conducting a trustee's sale while a borrower's application for a workout plan or loan modification is pending or on appeal from a servicer's denial of the application.  (*Ibid*.)

6

More particularly, if a loan servicer denies an application for a workout plan or loan modification, the loan servicer must advise the borrower of the reasons for the denial. (§ 2923.6, subd. (f).) Nationstar's July 25, 2013 letter denying their application for a loan modification stated: "We . . . regret to inform you that you do not meet the program guidelines because we are unable to create an affordable payment within the program terms." The denial letter sets forth the Harjos' right to appeal within 30 days, the procedure for appeal and other alternatives by which the Harjos might avoid foreclosure.

Contrary to the Harjos' contention, Nationstar's July 25, 2013 letter meets the requirements of section 2923.6, subdivision (f). If a denial was based on disallowance by an investor, a net present value calculation, or the debtor's failure to meet requirements of a previous loan modification, the denial must give the debtor notice of those reasons. (See § 2923.6, subd. (f)(2), (3) & (4).) Here, Nationstar's denial was based solely on the affordability of a modification, and, thus, the disclosure requirements of section 2923.6, subdivision (f)(2), (3) and (4) were not applicable. Because the letter provided the Harjos with notice of the time and manner in which to appeal the denial and other alternatives to foreclosure, it also met the other requirements of section 2923.6, subdivision (f). (See § 2923.6, subd. (f)(1) & (5).)

In sum, the record, by way of Nationstar's July 25, 2013 letter, demonstrates that Nationstar met the requirements of section 2923.6 and, in particular, all the requirements of section 2923.6, subdivision (f).

B. Section 2923.7

Section 2923.7 requires that when a borrower requests some form of foreclosure avoidance, the loan servicer must promptly provide the borrower with a "single point of

7

contact," which the statute defines as an individual or team of personnel, each of whom has access to information about the borrower, his or her loan, the programs available to the borrower, and access to individuals with the ability and authority to stop foreclosure proceedings when necessary. (§ 2923.7, subds. (b), (c) & (e).)

Nationstar sent the Harjos its first notice denying their application for a loan modification on May 23, 2013. The notice did not include information about the Harjos' appeal rights, but it did contain the following statement: "If you have any questions regarding this notice, think the reason(s) stated herewith no longer apply or if you experience additional changes, which you feel warrant consideration, your Foreclosure Prevention Specialist is Stephen Ellis and can be reached at 8774485023 or via mail at 350 Highland Drive, Lewisville, TX 75067." As defendants contend, on its face this notice satisfied the requirement that the Harjos be given a single point of contact; moreover, the SAC does not allege that Mr. Ellis did not perform any of the duties required of a "single point of contact" under section 2923.7.

In sum then, again the record shows on its face that Nationstar in fact met the requirements of the provisions of the HBR the Harjos assert.

C.  Section 2924.10

Section 2924.10 requires that within five business days after a borrower submits a complete loan modification to a loan servicer, the loan servicer must send the borrower acknowledgement that it has received the application and information about the loan modification process. (See § 2924.10, subd. (a)(1)–(4).) Section 2924.10 became effective on January 1, 2013. (See Stats. 2012, ch. 86, § 13.)

The Harjos' loan modification application was made on July 29, 2012. There is

8

nothing on the face of the statute, or in its history, that suggests the acknowledgement requirement of section 2924.10 applies to loan modification applications made before January 1, 2013. Thus, section 2924.10 will not support a claim based on Nationstar's failure to promptly acknowledge the Harjos' 2012 modification application.

D. Section 2924.11

Section 2924.11 prevents a loan servicer from recording a notice of default or notice of sale, or conducting a sale, if it has agreed in writing to a work out, loan modification or other foreclosure alternative and the borrower is in compliance with the agreement. (See § 2924.11, subd. (a).) Although not specific, the SAC alleges the defendants also violated section 2924.11. Apparently, the Harjos rely on the forbearance agreement they made with Aurora in November 2011. As we have noted, the forbearance agreement by its terms required the Harjos make a payment of $98,449 on or before May 1, 2012 and further provided that the forbearance agreement expired on that date. There is nothing in the record that alleges or shows that any of the defendants recorded a notice of default or sale or conducted a sale during the term of the forbearance agreement. Thus, the record will not support any allegation the defendants violated section 2924.11.

In sum then, on this record, the SAC does not set forth any actionable violation of the HBR.

III

The Harjos contend that in addition to claims for relief under the HBR, they are entitled to quiet title, cancellation of instruments, and an accounting. None of the legal theories the Harjos advance support these claims.

9

A. Quiet Title and Cancellation of Instruments

By way of their first and second causes of action, the Harjos allege the defendants have "no right, title or interest" in their home, that MERS's 2011 assignment of the deed of trust to Aurora was invalid and that Aurora's later assignment to Nationstar was similarly invalid.

In the trial court and on appeal, the Harjos have argued the defendants have no interest in their property because, following Magnus's dissolution, MERS had no power to transfer the deed of trust to Aurora and, alternatively, because the Harjos are informed and believe the notary's signature on the assignment was forged. The Harjos allege that the forged assignment also gives them the right to cancel both assignments of the deed of trust.

In short, by way of their quiet title and cancellation of instrument causes of action, the Harjos have directly challenged the defendants' right to foreclose on the deed of trust. As the defendants point out, the trustor under a deed of trust does not have standing to bring an action challenging the authority of the person or entity commencing foreclosure proceedings. (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 511-512; *Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 440-442; *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1154.) "California courts have refused to delay the nonjudicial foreclosure process by allowing trustor-debtors to pursue preemptive judicial actions to challenge the right, power, and authority of a foreclosing  'beneficiary' or beneficiary's 'agent' to initiate and pursue foreclosure.  [Citations.]" (*Jenkins v. JPMorgan Chase Bank, N.A.*, *supra*, at pp. 511-512.)  "The recognition of the right to bring a lawsuit to determine a nominee's

10

authorization to proceed with foreclosure on behalf of the noteholder would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures." (*Gomes v. Countrywide Home Loans, Inc.*, *supra*, at p. 1155.)

There are other defects in the Harjos' theories. Under any fair reading of the SAC, Magnus assigned its interest in the note to Deutsche Bank *before* Magnus was dissolved; as the Harjos themselves acknowledge, unless otherwise agreed, assignment of the underlying debt to Deutsche Bank accomplished assignment of any security for the debt, in particular the deed of trust. (See § 2936.) By the express terms of the deed of trust, MERS was the nominee of both Magnus and *any of its assigns*. Thus, by the time Magnus was dissolved, both the note and deed of trust had been effectively assigned to Deutsche Bank, and MERS, under the express terms of the deed of trust, was then acting as Deutsche Bank's nominee. Given these circumstances, Magnus's dissolution did not affect the validity of MERS's assignment of its interest in the deed of trust to Aurora or Aurora's later assignment to Nationstar.

In this regard, the Harjos' reliance on the prospectus that was issued with respect to the securitization of their note is unavailing. Nothing in the prospectus supports their contention that, by referring to MERS as the nominee on mortgages and deeds of trust, any of the defendants agreed or intended that the Harjos' note would be "split" from the deed of trust so that the note would become an unsecured debt.

Moreover, any alleged forgery[2] by a notary of the assignment of the deed of trust

---

2    Evidently, the Harjos' forgery allegation is based on their belief the notary who verified the assignment was a so-called "robo-signer," who did not fully perform her

11

from MERS to Aurora will not give the Harjos any right to relief by way of a quiet title or cancellation of instruments. Any forged or defective assignment of the deed of trust did not have any impact on the Harjos' interests. As the court in *Fontenot v. Wells Fargo*, *supra*, 198 Cal.App.4th at page 272 stated in rejecting a similar challenge to the validity of a MERS assignment: "Even if MERS lacked authority to transfer the note, it is difficult to conceive how plaintiff was prejudiced by MERS's purported assignment, and there is no allegation to this effect. Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note. Plaintiff effectively concedes she was in default, and she does not allege that the transfer to HSBC interfered in any manner with her payment of the note (see, e.g., *Munger v. Moore* (1970) 11 Cal.App.3d 1, 7-8 [failure by lender to accept timely tender]), nor that the original lender would have refrained from foreclosure under the circumstances presented. If MERS indeed lacked authority to make the assignment, the true victim was not plaintiff but the original lender, which would have suffered the unauthorized loss of a $1 million promissory note."

### B. Accounting

As the defendants point out, the Harjos' accounting claim must fail because they do not claim and likely cannot claim that *they* are owed any money with respect to the note and deed of trust. (See *Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 179.) Indeed they do not dispute that, as set forth in the notices of default attached as exhibits

---

duties as a notary. (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 272.)

to the SAC, they failed to make payments on the note they executed at the time they purchased their home.

IV

The Harjos contend they are also entitled to relief under theories adopted by the court in *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1094-1098 (*Glaski*). In *Glaski*, following the sale of his home at a trustee's sale, the plaintiff brought a wrongful foreclosure action against the bank that conducted the sale. The plaintiff alleged the defendant bank did not have the power to conduct the sale because the assignment of the note and deed of trust to the bank's predecessor, a securitized trust, had occurred *after* the closing date of the trust and, under governing New York law, was therefore void, rather than voidable. The court in *Glaski* held that a borrower could challenge a void transfer of a note and deed of trust, but not a voidable transfer. (*Id.* at p. 1095.) *Glaski* is not controlling here for two reasons.

First, the predicate for relief under *Glaski*—that there was a transfer to a trust governed by New York law *after* the trust had closed—is no where alleged in the SAC. Second, considerable doubt as to the validity of *Glaski* has been expressed by a number of other courts. (See *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75 [rejecting *Glaski* and finding borrower has no standing to challenge assignment of deed of trust]; *Sandri v. Capital One, N.A. (In re Sandri)* (Bankr. N.D.Cal. 2013) 501 B.R. 369, 374-375 [explaining how *Glaski* unpersuasively departs from California jurisprudence]; *Rajamin v. Deutsch Bank Nat'l Trust Co.* (2d Cir. 2014) 757 F.3d 79, 90 [rejecting Glaski as inconsistent with New York and other court's interpretations of New York law].) In particular, we question whether, as here, borrowers

13

who cannot show that they have been in any manner prejudiced by a procedural defect in the assignment of their notes and deeds of trusts may make a claim challenging those assignments. (See *Jenkins v. JPMorgan Chase Bank, N.A.*, *supra*, 216 Cal.App.4th at pp. 511-512; *Debrunner v. Deutsche Bank National Trust Co.*, *supra*, 204 Cal.App.4th at pp. 440-442; *Gomes v. Countrywide Home Loans, Inc.*, *supra*, 192 Cal.App.4th at p. 1154.)

V

The Harjos amended their complaint twice. Moreover, none of the facts alleged show that any conduct on the part of the defendants harmed their legitimate interests. Under these circumstances, the trial court did not abuse its discretion in sustaining the defendants' demurrer without leave to amend.

DISPOSITION

The judgment is affirmed. Defendants to recover their costs of appeal.

BENKE, Acting P. J.

WE CONCUR:

HUFFMAN, J.

HALLER, J.

14